IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAWAD FITTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 7353 |
| ) | |
| NAVISIS FINANCIAL GROUP, LLC, an Illinois ) | |
| limited liability company, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Jawad Fitter, a former employee of defendant Navisis Financial Group, LLC ("Navisis"), alleges that Navisis unlawfully discriminated against him by subjecting him to a hostile work environment and forcing him to resign. (Dkt. No. 1 ("Compl.") ¶¶ 6-9.) Fitter brings three counts against Navisis under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. The first count alleges that Fitter's religion was a motivating factor in the discrimination, the second alleges that Fitter's national origin was a motivating factor, and the third alleges that Fitter's race was a motivating factor.

Currently pending before the court is Navisis's "Motion to Dismiss, or Alternatively, to Stay Pursuant to the *Colorado River* Abstention Rule." (Dkt. No. 7.) For the reasons explained below, that motion is denied.

BACKGROUND

According to the complaint, Jawad Fitter is a Muslim born in Pakistan of the "Asian race." (Compl. ¶ 4.) Fitter was an employee of defendant Navisis from July 8, 2009, through June 20, 2011. (*Id.*)

Fitter alleges that during his employment at Navisis, his supervisor, Kevin D. Keane, and the CEO of Navisis, Jack Bruscianelli, subjected him to a hostile work environment because of his religion, national origin, and race. (*Id.* ¶¶ 6-7.) Specifically, Fitter alleges that Keane and Bruscianelli spoke negatively about Muslims and used e-mail to send Fitter news stories and jokes that characterized Muslims negatively. (*Id.* ¶ 7.) In office conversation and emails, Keane and Bruscianelli regularly referred to Fitter and Muslims in general with slurs such as "nigger," "sandnigger," "faggot," Jihad," and "terrorist." (*Id.*)

In addition, Keane and Bruscianelli sent Fitter pictures of naked women and asked him to look for "hookers" for them on Craigslist because they knew that this behavior would offend Fitter's religious beliefs. Keane and Bruscianelli also told Fitter that Pakistan was a country of cabdrivers, and regularly assigned Fitter to chauffeur customers and fellow employees because Fitter was Pakistani. (*Id.*) On other occasions, Keane and Bruscianelli required Fitter to use a nickname, "Jay," with customers because "Jawad" was "too ethnic." (*Id.*) Finally, Keane and Bruscianelli pressured Fitter to buy lunch on "Pizza Days" for the entire office, something they did not require of other employees. (*Id.*)

As a result of that conduct, other employees also felt emboldened to act in a hostile manner because of Fitter's religion, national origin, and race. (*Id.*) Fitter felt those conditions made it unbearable to continue his employment and resigned on June 20, 2011. (*Id.*)

On September 23, 2011, Navisis filed a complaint against Fitter in the Circuit Court of the Eighteenth Judicial Circuit of the State of Illinois in DuPage County. (Dkt. No. 7, Ex. A.) The complaint alleged that Fitter failed to pay Navisis approximately $29,000 that he owed Navisis under his employment contract because he resigned from his job, and that Fitter was violating the non-solicitation and confidentiality provisions of his employment agreement. (*Id.*)

2

Fitter responded by filing a counterclaim in state court under 42 U.S.C. § 1981 alleging that Navisis violated the Fourteenth Amendment of the Constitution by subjecting him to a hostile work environment based on his "religion, ethnicity and color." (Dkt. No. 7, Ex. B ¶ 3.) The factual allegations underlying the § 1981 claim are identical to those underlying Fitter's Title VII claim. (*See* Dkt. No. 7, Ex. B.) Fitter also filed a second counterclaim for intentional infliction of emotional distress under Illinois law. (*Id.*)

ANALYSIS

Navisis's motion contends that Fitter's Title VII allegations should be dismissed, or at least stayed, to avoid conflicting with his § 1981 allegations based on similar subject matter in state court. In most cases, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Supreme Court, however, has created an exception to that rule "allowing federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817). There is a presumption against abstention, as federal courts have a "'virtually unflagging obligation' to exercise the jurisdiction Congress has given them." *Id.* (quoting *Colorado River*, 424 U.S. at 817). A district court should grant a stay only in "exceptional circumstances" based on "the clearest of justifications." *Id.* (citation and quotation marks omitted).

To determine whether to grant a stay under the *Colorado River* abstention rule, the court must conduct a two-part inquiry. First, the court must determine "'whether the concurrent state and federal actions are actually parallel.'" *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)

(citation omitted). Only if the actions are parallel will the court "consider a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.'" *Id.* (citation omitted). Two actions are "parallel" if they involve "substantially the same parties . . . contemporaneously litigating substantially the same issues." *Huon*, 657 F.3d at 646 (citation and quotation marks omitted). To determine if two suits are parallel, the court must ask if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (citation and quotation marks omitted).

Here, the factual allegations underlying Fitter's § 1981 counterclaim in the state court action and his Title VII claim in the federal action are identical. That two suits arise from the same "core of operative facts" is not enough, however, to make two suits parallel. *Id.* Instead, "*Colorado River* abstention . . . focuses on the more practical question whether the state case is likely to dispose of the . . . claims . . . brought in federal court." *Id.* That requirement is not met here, Fitter contends, because the two suits bring different claims. Specifically, Fitter asserts that the state court claim alleges discrimination based on "color," while the claim in federal court alleges discrimination based on "religion, national origin, and race."

Fitter's argument runs into two problems. First, although Fitter asserts that his state court § 1981 claim is based only on "color," his state court complaint shows otherwise, as it refers repeatedly to discrimination based on "ethnicity, religion and color." (Dkt. No. 7, Ex. B ¶¶ 3, 5.) Second, the court rejects any possible distinction between "ethnicity and color" on the one hand and "race and national origin" on the other in this context. Indeed, it is nonsensical to say that a § 1981 claim is based only on color or ethnicity, and not race, for § 1981 prohibits only racial discrimination. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987). The concept of racial discrimination under § 1981 is broad, of course, encompassing discrimination against all

4

"identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 613. But that broad definition only underscores the main point: that discrimination on the basis of color and ethnicity is functionally identical to racial discrimination for purposes of a § 1981 claim. The court therefore rejects Fitter's proposed distinction between "color and ethnicity" and "race and national origin."

But that does not mean that the two suits are parallel. The Supreme Court has also established that § 1981 does not cover discrimination on the basis of religion. *Id.* at 613 ("If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, *or his religion*, he will have made out a case under § 1981." (emphasis added).) Title VII, by contrast, explicitly forbids discrimination on the basis of religion. 42 U.S.C. § 2000e-2(a). Because the allegations regarding religious discrimination are peripheral to the § 1981 claim for racial discrimination, they might not be adjudicated in the state court suit. The religious discrimination claim will then need to be resolved in the federal Title VII suit. There is thus not a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Huon*, 657 F.3d at 645.

One could argue that Fitter's claim for emotional distress will lead to at least partial adjudication of the allegations of religious discrimination. The religious discrimination allegations are certainly relevant, for teasing and harassment directed at a person's religion may well lead to emotional distress. The Seventh Circuit has already rejected that argument, however, explaining in *Huon* that "[a]lthough all of Huon's claims relate to alleged mistreatment he suffered at work, the evidence necessary to establish defamation or emotional distress would be different from that required to prove discrimination." *Id.* at 647. The Seventh Circuit then held

5

that a Title VII discrimination claim in federal court is not parallel to a state court emotional distress claim addressing the same conduct. *Id.*

The Seventh Circuit has instructed district courts that "[i]f there is any doubt that cases are parallel, a district court should not abstain." *Id.* at 646. There is significant doubt that Fitter's counterclaims in state court are parallel to his federal claims. Accordingly, Navisis's motion for abstention is denied.

## CONCLUSION

For the reasons explained above, Navisis's "Motion to Dismiss, or Alternatively, to Stay Pursuant to the *Colorado River* Abstention Rule" (Dkt. No. 7) is denied. Navisis's answer is due 3/11/13. Counsel are to confer pursuant to Rule 26(f) and jointly file a Form 52 on or before 3/25/13. The case is set for status and entry of a scheduling order at 9:00 AM on 3/28/13. The parties are encouraged to discuss settlement.

ENTER:

                                        */s/ James F. Holderman*
                                        JAMES F. HOLDERMAN
                                        Chief Judge, United States District Court

Date: February 25, 2013